Gerald D. FRANKS a/k/a Jerry Franks

v.

Larry THOMASON.

Civ. A. No. C80–61A.

United States District Court,
N. D. Georgia,
Atlanta Division.

June 11, 1980.

Howell W. Ragsdale, Jr., Atlanta, Ga., for plaintiff.

John M. Vansant, Jr. and Alfred N. Corriere, of Vansant, Engram & Corriere, Albany, Ga., for defendant.

## ORDER

NEWELL EDENFIELD, District Judge.

This is a bankruptcy action to determine dischargeability of a judgment. It is before the court pursuant to Bankruptcy Rule 801[1] on appeal from an order of the bankruptcy court dated December 27, 1979, which denied appellant Franks' motion for a new trial and rehearing of appellee Thomason's motion for summary judgment.

### I. *Background*

This appeal has its origin in a suit filed in this court in 1972 by Thomason against Franks, First Palmetto Bank, Cox Broadcasting Company d/b/a WSB–TV, newsman Don McClellan and the Credit Bureau of Atlanta. That suit, brought under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681t, charged that Franks, then a director of First Palmetto Bank, had improperly obtained a credit report on Thomason, then a candidate for the Georgia Public Service Commission, and had provided the report to McClellan, who publicized its contents. Each of the defendants except Franks were dismissed or settled with Thomason prior to trial. Franks' attorneys were granted leave to withdraw from the case prior to trial, after almost two years of representation. Franks did not obtain substitute counsel, and failed to appear at the scheduled trial of the case. Judgment was entered against him in favor of Thomason in the amount of $20,000.

The district court's order stated that Franks had violated section 1681d of the Act in that he had failed properly to make the required disclosure to Thomason that he had obtained the credit data. Based upon evidence submitted by Thomason of injury to his law practice and attendant embarrassment and physical manifestations of that humiliation, the court awarded Thomason $10,000 in general damages. In addition, the court found that Franks' violation was willful and awarded $6,000 in punitive damages pursuant to 15 U.S.C. § 1681n. The court also assessed an additional $4,000 in attorneys' fees against Franks, bringing the total award to $20,000. Judgment was entered on September 16, 1975.[2]

1. Since this bankruptcy was filed prior to October 1, 1979, the old bankruptcy act and rules apply.

2. A particularly difficult strand in this knotty appeal is the question of precisely what violation or violations of the Fair Credit Reporting Act the district court based its judgment upon. The court's order expressly stated that Franks violated 15 U.S.C. § 1681d by failing to disclose to Thomason that he had procured a "consumer report." "Consumer report" is a term defined in the statute. That statute requires disclosure, however, only where a person procures an *"investigative* consumer report," which is defined in 15 U.S.C. § 1681a(e) as distinctly different from a "consumer report." Since no finding was made by the district court as to which type of report was procured, this court is somewhat uncertain as to what conduct by Franks supports that finding of a violation. Further, the court premised its finding of willfulness upon deposition testimony that Franks directed a bank employee to obtain the report despite Franks' acknowledged understanding that obtaining the report was improper. *See Larry W. Thomason v. Jerry Franks*, No. 16998 (N.D.Ga., Order of Sept. 16, 1975). However, under 15 U.S.C. § 1681d, obtaining a report is not a violation; only failing to disclose that the report was procured violates that provision. Thus the failure to disclose must have

been willful in order to award punitive damages for a violation of that section. It is particularly troubling, however, that the deposition testimony of Franks that is cited in support of the finding of willfulness does not support a finding that his failure to disclose was willful.

The foregoing raises the possibility that the district court found a basis for civil liability in a violation by Franks of 15 U.S.C. § 1681q, which provides penal sanctions for knowingly and willfully obtaining information from a consumer reporting agency under false pretenses. Such a cause of action has been recognized. *See Hansen v. Morgan*, 582 F.2d 1214, 1219–20 (9th Cir. 1978). As the court in *Hansen* stated:

The standard for determining when a consumer report has been obtained under false pretenses will usually be defined in relation to the permissible purposes of consumer reports which are enumerated in 15 U.S.C. § 1681b. This is because a consumer reporting agency can legally issue a report only for the purposes listed in § 1681b. If the agency is complying with the statute, then a user cannot utilize an account with a consumer reporting agency to obtain consumer information for a purpose not permitted by § 1681b without using a false pretense.

582 F.2d at 1219 (footnote omitted).

This court is compelled to conclude that the district court premised its award of punitive

On November 9, 1978, Franks filed a petition for voluntary bankruptcy, and listed the judgment as an unsecured debt from which he sought to be discharged. Thomason filed the instant adversary proceeding in the bankruptcy court contesting dischargeability, pursuant to section 17c of the Bankruptcy Act, 11 U.S.C. § 35(c), on January 4, 1979. Thomason sought a determination that the judgment against Franks was not dischargeable under the provision of section 17a(8) of the Bankruptcy Act, 11 U.S.C. § 35(a)(8). That subparagraph denies discharge for "liabilities for willful and malicious injuries to the person or property of another  . . . ." Thomason alleged that the express finding by the district court of a "willful" violation by Franks, together with its award of punitive damages, allowable by statute only where a violation is found to be willful, precluded discharge of the judgment debt.

Franks filed an answer to that complaint and subsequently filed a motion to dismiss for failure to state a claim, Rule 12(b)(6), Fed.R.Civ.P.[3] Thomason responded by filing a motion for judgment on the pleadings or summary judgment and a brief in support of that motion and in opposition to Franks' motion to dismiss. Franks filed no response to Thomason's motion.

The bankruptcy court entered an order on October 16, 1979 denying Franks' motion to dismiss and granting Thomason's motion for summary judgment. The record indicates that no oral hearing was held on these motions at that time. On October 31, 1979, Franks filed a "motion for new trial and rehearing,"[4] in an effort to obtain reconsideration of the order of October 16, 1979.

The bankruptcy court held an oral hearing on that motion on December 17, 1979. At the hearing, Franks attempted to introduce into evidence an affidavit by Don McClellan, the news reporter who publicized Thomason's credit information, which was not a part of the record in the district court suit. In addition, McClellan was present at the hearing and apparently was prepared to testify concerning the events leading up to that lawsuit, according to Franks' brief on appeal.

The bankruptcy court refused to consider the affidavit or to hear testimony from McClellan and on December 28, 1979 entered an order denying Franks' motion for new trial or rehearing. In that order, the court declared that Franks' motion "[is] an attempt to relitigate matters which could have been or should have been previously raised in prior litigation before the United States District Court or at the time of the consideration of the Motion for Summary Judgment previously filed in the case." It is unclear whether the bankruptcy court refused to consider the evidence based upon its conception of res judicata, or whether it simply viewed the evidence as tardy and exercised its discretion to refuse to reconsider its earlier order.

## II. *Issues on Appeal*

Franks filed the instant appeal to this court from that order denying reconsideration. He raises two issues as error by the bankruptcy court. The first issue is wheth-

---

damages upon a finding, albeit sub silencio, that Franks violated 15 U.S.C. § 1681q and that the express finding of "willfulness" by the court related to that violation. Consequently on remand, the bankruptcy court should determine whether either the failure to disclose or the obtaining of information under false pretenses was willful and malicious within the standards of section 17a(8) of the Bankruptcy Act. If either is found to have been willful and malicious within that meaning, then of course the debt may not be discharged.

**3.** The timing of that motion provides an interesting side issue. There is a division of authority concerning whether a party may even file a

motion to dismiss under Rule 12(b)(6) once the answer has been filed. *Compare Phillipine Airlines, Inc. v. National Mediation Board*, 430 F.Supp. 426 (N.D.Cal.1977) (required before answer) *with Local Division 519, Amalgamated Transit Union, AFL–CIO v. LaCrosse Municipal Transit Utility*, 445 F.Supp. 798 (W.D.Wis.), *aff'd*, 585 F.2d 1340 (1978) (allowed after answer). The court need not resolve that conflict in deciding this appeal, however.

**4.** This motion was inappropriate since no trial was ever held. *See* Rule 59(a), Fed.R.Civ.P. It is more appropriately viewed as a motion for relief from a judgment or order under Rule 60.

er the bankruptcy court erred in refusing to consider evidence *outside* the record in the underlying civil suit that might bear upon a determination of dischargeability. This objection refers to the affidavit and proffered testimony of McClellan that was excluded at the oral hearing on his motion for new trial or rehearing.

The second issue is whether the bankruptcy court erred in refusing to consider evidence *within* the record of the underlying civil suit that might bear upon a determination of dischargeability. This point refers to the deposition testimony of McClellan taken in 1973 and included in the record of the earlier case, which Franks claims the bankruptcy court refused to consider at the oral hearing on his motion for new trial or rehearing.

Stated more concisely, the issues that Franks seeks to raise in this appeal are whether the bankruptcy court should look beyond the order and judgment in the underlying civil action in determining whether the judgment is dischargeable under section 17a(8) and, if so, whether it should consider evidence outside the record or only that before the court in the previous suit.

### III. *Procedural Problems*

The procedural posture of this case presents several preliminary obstacles to reaching these questions.

Franks' notice of appeal stated that he was appealing from the order of December 28, 1979, which denied his motion for a new trial or rehearing. In his statement of issues on appeal filed January 10, 1980, Franks stated that he intended to contest the issue of whether evidence extrinsic to the record in the earlier civil action should have been admitted by the bankruptcy court. No mention was made of excluded evidence *within* the record in that case, although he raises that issue in his brief.

■ To complicate this appeal further, the order appealed from set forth two alternative grounds for denying Franks reconsideration of the order granting Thomason summary judgment: language indicating a

res judicata notion; and tardiness by Franks in producing the excluded evidence in response to the motion for summary judgment. This court is convinced, however, that this ambiguity is immaterial since if res judicata principles do not bar consideration of evidence beyond the judgment of the district court, then the bankruptcy court abused its discretion in refusing to consider the evidence solely due to Franks' tardiness in offering it.

■ Further, despite the omission by Franks of one of his points on appeal from his statement of issues, Thomason has not objected and has addressed both points in his brief. In addition, the parties have argued both the application of res judicata by the bankruptcy court in its order granting summary judgment, and its exclusion of the affidavit and testimony of McClellan from the December 17, 1979 hearing. For this reason, the court regards both of those rulings by the bankruptcy court as properly before this court on appeal.

■ Franks filed a motion in the bankruptcy court to dismiss for failure to state a claim under Rule 12(b)(6), Fed.R.Civ.P.[5] Franks' brief supporting that motion, however, included portions of deposition testimony by McClellan from the previous suit. Rule 12(b) requires that, when matters outside the pleadings are presented to and not excluded by the court on a Rule 12(b)(6) motion, the motion shall be treated as one for summary judgment.

Here, the deposition testimony of McClellan was not excluded by the bankruptcy court; it expressly referred to it in its order granting summary judgment. For this reason, Franks' motion to dismiss should have been more appropriately considered as one for summary judgment. Summary judgment practice in bankruptcy adversary proceedings is governed by Rule 56, Fed.R. Civ.P. *See* Bankruptcy Rule 756.

Under Rule 56, the appropriate standard is whether a material factual issue exists, in contrast to the Rule 12(b)(6) standard of

---

**5.** Expressly adopted by Bankruptcy Rule 712(b).

whether the plaintiff can prove any possible set of facts that would entitle him to the relief sought in the complaint. Although not expressly stated in its order, this court must infer that the bankruptcy court applied the proper standard to Franks' motion since it determined that no material factual issue existed and that Thomason was entitled to judgment as a matter of law.

Having resolved the procedural problems involved in this appeal, the court turns to the central issues presented.

### IV. Collateral Estoppel Effect of Underlying Judgment

Section 17a of the Bankruptcy Act, 11 U.S.C. § 35(a), provides that "[a] discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as . . . are liabilities for willful and malicious injuries to the person or property of another other than conversion as excepted under clause (2) of this subdivision."

The procedure for determining dischargeability of a debt is set forth at section 17c of the Act, 11 U.S.C. § 35(c). However, nowhere in that statutory procedure does it address the question of what evidence should be considered in making the determination.

The Supreme Court has recently addressed the application of section 17 to a state-court judgment sought to be discharged in bankruptcy. In *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), the Court held that res judicata did not preclude the bankruptcy court from considering extra-record evidence in determining dischargeability of a state-court judgment where the state court had not resolved the issues of fraud, deceit or malicious conversion, which the creditor raised as a bar to dischargeability.

The holding in *Brown* is inapposite to this case, however, since the facts there are readily distinguishable from those here. *Brown* dealt with questions that could have been, but were not, decided in the court that rendered the judgment. Here, the district court awarded punitive damages upon its express finding of a "willful" violation

of the Fair Credit Reporting Act by Franks. The factual scenario in this case was addressed by the Court in a footnote:

[*Brown*] concerns res judicata only, and not the narrower principle of collateral estoppel. Whereas res judicata forecloses all that which might have been litigated previously, collateral estoppel treats as final only those questions actually and necessarily decided in a prior suit. *Montana v. United States*, 440 U.S. 147, 153 [99 S.Ct. 970, 973, 59 L.Ed.2d 210] (1979); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 [99 S.Ct. 645, 649, n.5, 59 L.Ed.2d 645] (1979); *Cromwell v. County of Sac*, 94 U.S. 351, 352–353 [24 L.Ed. 195] (1877). If, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of § 17, then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the bankruptcy court.

Because respondent does not contend that the state litigation actually and necessarily decided either fraud or any other question against petitioner, we need not and therefore do not decide whether a bankruptcy court adjudicating a § 17 question should give collateral-estoppel effect to a prior state judgment. In another context, the Court has held that a bankruptcy court should give collateral-estoppel effect to a prior decision. *Heiser v. Woodruff*, 327 U.S. 726, 736 [66 S.Ct. 853, 857, 90 L.Ed. 970] (1946). The 1970 amendments to the Bankruptcy Act, however, have been interpreted by some commentators to permit a contrary result. See 1A J. Moore, J. Muler, & R. Oglebay, Collier on Bankruptcy § 17.16[6], p. 1650.2 (14th ed. 1978); Countryman, The New Dischargeability Law, 45 Am.Bankr.L.J. 1, 49–50 (1971). But see 1 D. Cowans, Bankruptcy Law and Practice § 253 (1978).

442 U.S. at 139, n. 10, 99 S.Ct. at 2213 n. 10.

Thus the Court expressly left open the question of whether collateral estoppel precludes inquiry beyond the judgment and

order in this case, after pointing out some of the conflicting authority on this point.

The 1970 amendments to the Bankruptcy Act conclusively vested the sole power to determine dischargeability in the bankruptcy court. Prior to these amendments, dischargeability was typically resolved by state courts. As the Court noted in *Brown*: "A secondary purpose . . . [in enacting the amendments] was to take these § 17 claims away from state courts that seldom dealt with the federal bankruptcy laws and to give these claims to the bankruptcy court so that it could develop expertise in handling them." (Footnote omitted.) 442 U.S. at 136, 99 S.Ct. at 2211.

The question of whether collateral estoppel is applicable to preclude consideration by the bankruptcy court of evidence such as the deposition testimony and affidavit of McClellan was recently considered by the Fifth Circuit in *Carey Lumber Co. v. Bell*, 615 F.2d 370 (5th Cir. 1980). By a brief per curiam opinion the court upheld the district court's affirmance of summary judgment by the bankruptcy court. The court based its ruling upon the district court's memorandum opinion, which it published as an appendix to its opinion.

In that memorandum opinion, the district court, albeit in dictum, reviewed the decisions in *Brown v. Felsen, supra,* and *In re Houtman*, 568 F.2d 651 (9th Cir. 1978), and concluded that

> a bankruptcy court faced with a claim of nondischargeability under § 17 and presented with a state court judgment evidencing a debt is not bound by the judgment and is not barred by res judicata or collateral estoppel from conducting its own inquiry into the character and, ultimately, the dischargeability of the debt. 615 F.2d at 377.

The court went on to state that, although not binding on the bankruptcy court, the judgment and findings of the court that

rendered them could properly be considered as evidence of dischargeability.

Despite the nature of the foregoing as dictum in the district court's memorandum that is not technically binding authority, this court views that passage as a strong indication of how the Fifth Circuit would view this issue were it directly to rule on it.

■ Accordingly, this court is persuaded that the prevailing trend of recent authority points to the inapplicability of collateral estoppel to the ultimate question of dischargeability concerning state court judgments.

Moreover, the court can discern no reason, in policy or law, to distinguish between state court judgments and those rendered in the federal courts in this regard. Since one of the policies underlying the 1970 amendments to the Bankruptcy Act was to develop an expertise in the bankruptcy court, presumably in the interest of consistency and uniformity in the law, that policy would not be well-served by creating an exception to this rule for federal court judgments.

■ Based upon the foregoing, the court concludes that the bankruptcy court erred in refusing to consider both extrinsic evidence and evidence within the record of the underlying suit. The decision of the bankruptcy court is REVERSED; the case is REMANDED for a consideration of the affidavit and deposition testimony of McClellan, and for a hearing to allow Franks to present testimony by McClellan.[6]

The court must make clear, however, that it does not hold the view expressed by other courts that "there is no room for the application of the technical doctrine of collateral estoppel in determining the nondischargeability of debts described in section 17a[(8)] of the Bankruptcy Act." *See In re Houtman*, 568 F.2d 651, 653 (9th Cir. 1978). The bankruptcy court may not relitigate the entire case; to do so would do violence to

---

6. The court is somewhat intrigued by the testimony that Franks hopes to elicit from McClellan. In his deposition taken in 1973, McClellan refused to answer any question that could even remotely shed light upon the events leading up to that lawsuit, citing confidentiality of news sources. It is unclear whether McClellan has modified that stance, or whether a court test of his position will emerge from this remand.

judicial finality, a fundamental tenet of our judicial system. Congress only intended for that policy to give way to the extent necessary to enable the bankruptcy court to make the ultimate determination of dischargeability of debts under section 17a(8). Those facts that were actually litigated and necessary to the decision in the court that rendered the judgment, and that are discernible from the record of the case, should not be reopened absent a compelling reason to avoid injustice. Such facts are obviously much easier to discern from the record in a non-jury case where detailed findings of fact have been made. Where a jury has rendered a general verdict, however, ascertaining their factual conclusions may be more difficult. The bankruptcy judge must necessarily tailor his application of collateral estoppel to the circumstances of the case before him, consistent with its purposes and the countervailing intent of Congress. The ultimate finding of whether an injury was willful and malicious, as defined above, is solely the province of the bankruptcy court; those subordinate factual findings that are necessary to that ultimate determination, that have not been actually and necessarily litigated or that are not discernible from the record, must also be determined by it after hearing all relevant evidence that is presented by the parties.

### V. *Collateral Estoppel by Default Judgment*

An alternative ground exists for reversing and remanding this action.

As noted above, collateral estoppel bars relitigation of facts, in a subsequent action between the same parties upon a different cause of action, that were actually decided and necessary to the decision in the prior action. *See Irving National Bank v. Law*, 10 F.2d 721, 724 (CCA2d 1926) (Learned Hand, J.). The preponderant view is that a default judgment has no collateral estoppel effect. This has been applied to bankruptcy dischargeability cases. *See In re McMillan*, 579 F.2d 289, 292 (3d Cir. 1978), *citing* 1B *Moore's Federal Practice* ¶ 0.419[3.–6], at 3121 (2d ed. 1978). *See also* 1B *Moore's, supra,* ¶ 0.444[2], at 4006.

The First Circuit also recently has considered this question in *Commonwealth of Massachusetts v. Hale*, 618 F.2d 143 (1st Cir. 1980). There, a state court rendered a default judgment against a defendant for damages under state statutes in connection with consumer fraud in home improvements. Although it ultimately left the questions unresolved as unnecessary to its holding, the court expressed some doubt as to the applicability of collateral estoppel to dischargeability proceedings and particularly where the judgment sought to be discharged was affirmed by default.[7]

Although prior cases leave some doubt as to whether a party's failure to appear for trial after an answer and appearance have been filed constitutes a default under Rule

---

7. As the court stated:

It is far from settled, particularly in light of the 1970 amendments to the Bankruptcy Act which grant the bankruptcy courts exclusive jurisdiction to find dischargeability that "there is . . . room for the application of the technical doctrine of collateral estoppel in determining the nondischargeability of debts described in section 17(a)(2), (4), and (8) of the Bankruptcy Act." *In re Houtman*, 568 F.2d 651, 653 (9th Cir. 1978). *See Brown v. Felsen*, 442 U.S. 127, 139, 99 S.Ct. 2205, 2213, 60 L.Ed.2d 767 (1979). Several courts and commentators have taken the position that collateral estoppel has no role to play in the dischargeability determination. *See In re Houtman, supra* ; *In re Pigge*, 539 F.2d 369 (4th Cir. 1976); *In re Blessing*, 442 F.Supp. 68 (S.D.Ind.1977); 1A *Collier on Bankruptcy,*

§ 17.16[6] at 1650.1–1650.2. *But see In re Ross*, 602 F.2d 604 (3d Cir. 1979). There is the further question here, moreover, whether, even assuming collateral estoppel is generally applicable in section 17 discharge proceedings, the doctrine may be invoked where the prior judgment was entered by default. *See In re McMillan*, 579 F.2d 289, 292 (3d Cir. 1978) ("[Because] the bankrupts did not 'actually litigate' the [state court] case, not even facts which were necessary to that [default] judgment can collaterally estop them from relitigating the same issues in the bankruptcy case"). *See also In re Mallory*, 1 B.R. 201 (N.D.Ga.1979); 1B *Moore's Federal Practice,* ¶ 0.444[2] at 4005 and 1979–80 Cumulative Supp. at 204. *But see United States v. McQuatters*, 370 F.Supp. 1286 (W.D.Tex. 1973) (pre-1970 amendments).

822

55, Fed.R.Civ.P., *see Bass v. Hoagland*, 172
F.2d 205 (5th Cir.), *cert. denied*, 338 U.S.
816, 70 S.Ct. 57, 94 L.Ed. 494 (1949), espe-
cially where the trial court proceeds to hear
evidence from the party who appears and to
render judgment upon it,[8] *see Tartaglia v.
Del Papa*, 48 F.R.D. 292 (E.D.Pa.1969), this
court is convinced that the scope of default
that is contemplated under the principles of
collateral estoppel is broader than that ap-
plicable to the rules of procedure. The
requirement that the issues sought to be
estopped must have been "actually litigat-
ed" in the prior proceeding contemplates
something more than a one-sided presenta-
tion of facts. Thus, even if the district
court did hear evidence concerning liability
prior to rendering judgment, this court
would deny collateral estoppel effect to
those issues necessary to that judgment, on
the ground that they were not actually
litigated.

### VI. *Willfulness of Injury*

A third alternative ground exists for de-
nying collateral estoppel effect to the dis-
trict court's finding of a willful violation of
the Fair Credit Reporting Act by Franks.

■ As stated above, under section
17a(8) of the Bankruptcy Act, liabilities for
"willful and malicious injuries to the person
or property of another" are not discharge-
able. This intent requirement is generally
interpreted as follows:

> In order that a provable liability come
> within this exception the injuries must
> have been both willful and malicious. An
> injury to person or property may be a
> malicious injury within this provision if it
> was wrongful and without just cause or
> excuse, even in the absence of personal
> hatred, spite or ill will. The word "will-
> ful" means nothing more than intention-
> ally doing an act which necessarily leads
> to injury. Therefore, a wrongful act
> done intentionally, which necessarily pro-
> duces harm and is without just cause or
> excuse, may constitute a willful and mali-
> cious injury.

*Vickers v. Home Indemnity Co.*, 546 F.2d
1149, 1150 (5th Cir. 1977), *citing* 1A *Collier
on Bankruptcy* § 17.17, at 1650.4–1650.6
(14th ed. 1976).

■ The injury that Thomason com-
plained of, and was compensated for, was a
decline in his law practice, humiliation and
attendant physical manifestations. The vi-
olations of the Act that the district court
found were "willfully" committed by
Franks, under this court's analysis of that
ruling, were his failure to disclose to Thom-
ason that he had obtained the report and
his obtaining it by false pretenses. Neither
of these violations necessarily produces the
harm complained of. An analysis of the
entire record in that case, as well as new
evidence, may reveal that Franks disclosed
the contents of the report with the intent
that they would be publicized and injure
Thomason's candidacy and reputation.
Upon such a finding, non-dischargeability
would be warranted. The judgment and
findings of the district court do not deal
with that question, however. It may be
possible that Franks was merely negligent
in permitting the credit information to be-
come public, and that, although the *viola-
tion* of the Act may have been willful (a
question to be determined by the bankrupt-
cy court), the *injury* was negligent and thus
dischargeable. The anticipated testimony
of McClellan may shed light upon this ques-
tion.

Indeed, the standard for determining a
"willful" violation of the Fair Credit Re-
porting Act may be very different from the
standard used to find a "willful and mali-
cious injury" within the bankruptcy context
as set out above. As the Supreme Court
has stated: " 'Willful' is a word 'of many
meanings, its construction often being in-
fluenced by its context'." *Screws v. United
States*, 325 U.S. 91, 101, 65 S.Ct. 1031, 1035,
89 L.Ed. 1495 (1945) *quoting Spies v. United
States*, 317 U.S. 492, 497, 63 S.Ct. 364, 367,

---

**8.** The record of the proceedings in the district
court that produced the judgment at issue here
does not clearly reflect whether the district
court heard evidence as to liability, or whether

it simply entered a default judgment before
holding its hearing as to damages. No tran-
script of that hearing is before the court.

87 L.Ed. 418 (1943). Many statutes contain a willfulness requirement as a prerequisite to liability or a penalty. *Cf.* Federal Power Act, 16 U.S.C. § 825n(a) (willful failure to comply with rule or subpoena); Occupational Safety and Health Act, 29 U.S.C. § 666 (willful violation of safety standards); Fair Labor Standards Act, 29 U.S.C. § 216 (willful violation); Internal Revenue Code, 26 U.S.C. § 7203 (willful failure to file return). However, each of those standards is defined somewhat differently. *See, e. g., Alabama Power Co. v. Federal Energy Regulators Commission*, 584 F.2d 750, 752 (5th Cir. 1978) (intentional disregard or plain indifference to requirements); *Intercounty Construction Co. v. Occupational Safety & Health Review Commission*, 522 F.2d 777, 780 (4th Cir. 1975) (conscious, intentional, deliberate, voluntary decision); *Hays v. Republic Steel Corp.*, 531 F.2d 1307, 1310 (5th Cir. 1976) (intentionally and knowingly despite good faith); *United States v. Rosenfield*, 469 F.2d 598, 601 (3d Cir. 1972) (with wrongful purpose of deliberately intending not to file a return which defendant knew he should file). The court has not located any case that defines willfulness under the Fair Credit Reporting Act, however.

Moreover, it is well-settled that the standard of willfulness in a civil case is distinct from the "bad purpose" requirement of criminal statutes. *See Screws v. United States, supra*, 325 U.S. at 101, 65 S.Ct. at 1035. As noted earlier, in the case at bar, it is unclear whether the district court based its finding of liability upon Franks' violation of the civil or the criminal provisions of the Act. It is equally unclear, therefore, which formulation of willfulness was applied by the district court in awarding punitive damages. It necessarily follows that it is impossible to compare the standard applied there with the bankruptcy law's "willful and malicious" in order to determine whether the latter requirement was satisfied.

A great potential for injustice can arise through the talismanic application of principles of judicial finality to foreclose all inquiry into dischargeability. The bankruptcy court must have the freedom to discharge its statutory mandate of determining the ultimate question of dischargeability, unfettered by prior findings concerning a litigant's "willfulness."

### VII. *Summary*

In summary, the court REVERSES and REMANDS for proceedings consistent with this order.

So ORDERED, this 10th day of June, 1980.