In re Richard Emory GRAINGER a/k/a Richard E. Grainger, Debtor.

The FIRST NATIONAL BANK OF GAINESVILLE, Plaintiff,

v.

Richard Emory GRAINGER, Defendant.

Bankruptcy No. 81–00622.
Complaint No. 81–0258.

United States Bankruptcy Court,
D. South Carolina.

Oct. 27, 1981.

---

2. Swatara had not posted its books for 1981 at the time of the audit but this is a matter of double entry bookkeeping.

**8**

Amos A. Workman, Butler, Means, Evins & Browne, Spartanburg, S. C., for plaintiff.

T. Louis Cox, Spartanburg, S. C., for defendant.

## MEMORANDUM AND ORDER

J. BRATTON DAVIS, Bankruptcy Judge.

This matter is before the court on an adversary proceeding in which the plaintiff seeks to have the defendant's debt to the plaintiff excepted from discharge under 11 U.S.C. § 523(a)(6) which states:

"A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt * * * for willful and malicious injury by the debtor to another entity or to the property of another entity; * * *."

### FACTS

1. On November 14, 1975, the plaintiff-bank made a loan to a corporation, "The Meating Place, Inc.", for which the defendant, as president of the corporation, executed a $30,000 promissory note providing for interest thereon at the rate of 9% *per annum* and monthly installment payments of $482.67, which include principal and interest.

2. The defendant personally guaranteed the payment of the note by assigning all his rights, title and interest in a note which had been given to him by three men acting on behalf of a business in Fort Lauderdale, Florida. This note (hereinafter referred to as the Florida note) was in the amount of $42,000 payable in monthly installments of $500 per month with interest at 8% *per annum* payable on January 2nd of each year until the full amount is paid. There was no evidence as to the amount owing on the assigned note. The bank's employees testified that they did not enquire and, therefore, did not know the amount owing on the note.

3. The defendant collected the monthly payments on the Florida note from May 8, 1975 until August 1977, and he also collected the interest each year as it came due. The bank's employee testified that as long as the defendant made his payments on the $30,000 note to the bank it had no objections to the defendant's collecting these funds.

4. In May 1977, the three makers of the Florida note sold their business to persons other than the parties hereto, but discussed the note's status with the defendant. The purchasers of the business agreed to assume one-half of the outstanding indebtedness on the note; and the original makers agreed to pay $14,062, the remaining half of the outstanding balance, to the defendant. This latter sum was paid to the defendant as had all previous payments. Shortly thereafter, the defendant fell behind in making payments to the bank.

5. In August 1977, the defendant moved to Spartanburg, South Carolina. Two representatives of the bank went to Spartanburg to confer with the defendant. These officials brought a proposed agreement with them which the defendant executed. The agreement provided for the consolidation of several other notes that had been given to the bank by the defendant. It also provided for the defendant's release to the bank of the assets of The Meating Place, Inc., the defendant's house and lot and several vehicles. All of these assets were to be disposed of by the bank and the proceeds thereof to be applied to the $30,000 note.

6. The bank disposed of these assets; but even though the $30,000 note was given to the bank before the defendant gave his personal notes to the bank, the bank did not apply all of the funds received from the sale of the corporate assets to the corporate note. The testimony of bank officers—as well as a balance sheet showing proceeds from the sale and the application thereof—reveal that the assets received from the sale of the corporate property were applied to the defendant's personal notes. If the bank had applied the funds received from the sale of the corporate and personal assets to the oldest note (the $30,000 corporate note) the corporate debt would have been paid in full.

7. The bank brought an action against the defendant in the United States District Court for the Northern District of Georgia alleging the defendant had willfully and maliciously converted the $14,062 received by him from the Florida note. Upon the defendant's default, the district court gave a $14,062.50 judgment to the plaintiff on account of the defendant's willful and malicious conversion of property plus $10,000 punitive damages for such conversion.[1] It appears to this court that the district court had jurisdiction to grant such judgment.

8. The debtor filed his petition for relief under Chapter 7 of the Bankruptcy Code (11 U.S.C. § 701, et seq.) on April 23, 1981.

## ISSUE

The issue in this case is whether or not the judgment debt of the defendant is excepted from discharge under § 523(a)(6).

## DISCUSSION

### I

■ In determining whether or not the judgment debt is excepted from discharge, the weight to be given to the Georgia judgment must first be considered. Since *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), it is clear that *res judicata* does not prohibit the bankruptcy court's enquiring into the dischargeability of a debt under the Bankruptcy Act of 1898, as amended. The rationale of *Brown* seems to apply to dischargeability issues under 11 U.S.C. § 523(a) of the Bankruptcy Code of 1978—bankruptcy courts are vested with exclusive jurisdiction as to dischargeability of debts under the Bankruptcy Code. *See, Matter of Eskenazi*, 6 B.R. 366 (Bkrtcy. App. 9th Cir. 1980).

■ In considering whether or not this court is collaterally estopped in its determination of dischargeability by the judgment of the district court on relevant issues of fact, this court adopts the position taken by

---

1. The original amount of the district court judgment was $31,260.06. Of the $24,062.50 in dispute here, $14,062.50 represents actual damages for conversion of the proceeds from the Florida note and $10,000 represents punitive damages for such conversion. The remaining $7,197.56 of the original $31,260.06 judgment was due on another promissory note and has been satisfied and so is not at issue here.

numerous other courts which allows a bankruptcy court, in determining dischargeability, to go behind judgments previously rendered in non-bankruptcy courts and consider additional evidence on issues already decided upon by those courts. *See, Franks v. Thomason*, 4 B.R. 814 (D.C.N.D.Ga.1980); *Eskenazi, supra; In re Day*, 4 B.R. 750 (D.C.S.D.Ohio 1980); *In re McKenna*, 4 B.R. 160 (Bkrtcy.N.D.Ill.1980); *In re Houtman*, 568 F.2d 651 (9th Cir. 1978); *Commonwealth of Massachusetts v. Hale*, 618 F.2d 143 (1st Cir. 1980); *In re Godfrey*, 472 F.Supp. 364 (M.D.Ala.1979). When the non-bankruptcy courts' judgments have been entered by default, as in the case here, bankruptcy courts have held the doctrine of collateral estoppel inapplicable in preventing the bankruptcy courts' consideration of the dischargeability of the debts. *See, McKenna, supra*, at 162; *Matter of McMillan*, 579 F.2d 289, 293 (3rd Cir. 1978). The court in *Franks, supra*, held that, notwithstanding a federal district court's judgment, the bankruptcy court was not estopped to make an independent determination of dischargeability. The facts in that case are similar to the facts in the present case.

This court is not bound by judgment of the Georgia case as to implications of maliciousness and willfulness.

## II

Having determined that this court is not bound by the Georgia judgment, the court must determine whether or not the debt in question may be excepted from discharge under § 523(a)(6).

11 U.S.C. § 727 requires the court to grant a discharge to an individual debtor in a Chapter 7 case unless there is an exception to discharge.[2]

Section 523(a)(6) excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to the property of another entity."

"An injury to an entity or property may be a malicious injury within this provision if it was wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill will. The word willful means deliberate or intentional, a deliberate or intentional act which necessarily leads to injury. Therefore, a wrongful act done intentionally which necessarily produces harm and is without just cause or excuse may constitute a willful and malicious injury." 3 *Collier on Bankruptcy* ¶ 523.16[1] at 523-115 (15th ed. 1979).

This definition has been adopted by numerous courts. *See, In re Cooney*, 8 B.R. 96 (Bkrtcy.W.D.Ky.1980); *In re Smith*, 11 B.R. 20 (Bkrtcy.N.D.Ohio 1981); *In re Donnelly*, 6 B.R. 19 (Bkrtcy.D.Or.1980); *In re McGiboney*, 8 B.R. 987 (Bkrtcy.N.D.Ala.1981); *In re Hodges*, 4 B.R. 513 (Bkrtcy.W.D.Va. 1980).

■ The plaintiff herein challenging the dischargeability of the defendant's debt bears the burden of proof. *In re Stone*, 11 B.R. 209 (Bkrtcy.D.S.C.1981); *In re Green*, 5 B.R. 247 (Bkrtcy.N.D.Ga.1980); *In re Wray*, 1 C.B.C.2d 59 (M.D.Tenn.1979). The proof must be clear, cogent, and convincing evidence. *In re Barlick*, 1 B.C.D. 412 (D.R.I. 1974); *American Finance Corp. v. Adams*, 2 B.C.D. 204 (D.R.I.1975).

With regard to the plaintiff's burden in excepting to the discharge of a debt, this court once again is mindful of the admonition expressed in *Hightower v. Mower*, 1 B.C.D. 378, 380 (E.D.Va.1974):

"A creditor challenging a discharge bears quite a burden under the law. Exceptions to discharge are to be 'construed strictly against the objection,' *Royal Indemnity Co. v. Cooper*, 26 F.2d 585 (4th

---

2. One of the primary purposes of the bankruptcy act is to give debtors "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt." *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934); *Lines v. Frederick*, 400 U.S. 18, 91 S.Ct. 133, 27 L.Ed.2d 124 (1970); Accord, e.g.,

*Harris v. Zion's Savings Bank & Trust Co.*, 317 U.S. 447, 451, 63 S.Ct. 354, 357, 87 L.Ed. 390 (1943); *Stellwagen v. Clum*, 245 U.S. 605, 617, 38 S.Ct. 214, 218, 62 L.Ed. 507, (1918); *Perez v. Campbell*, 400 U.S. 818, 91 S.Ct. 71, 27 L.Ed.2d 45 (1971). "[Section 727] is the heart of the fresh start provisions of the bankruptcy law." Legis. History following § 727.

Cir. 1928), and 'liberally in favor of the bankrupt.' *Roberts v. Ford*, 169 F.2d 151 (4th Cir. 1948)."

The bank, alleging that the defendant willfully and maliciously converted the $14,062.50 payment received by the defendant from the original three makers of the Florida note, contends that the $24,062.50 (representing the unsatisfied balance of the judgment rendered in the district court in Georgia) is excepted from discharge by § 523(a)(6).

The defendant contends that his collecting and retaining the $14,062.50 on the Florida note, though possibly a technical conversion, was not willful nor malicious since the plaintiff had allowed the defendant to collect the monthly payments and the yearly interest payments on the note for more than two years—such payments were collected by the defendant, and with the bank's acquiescence, even after he had assigned the note to the bank. The bank's witness testified that the bank had no objections to the defendant's collecting the payments on the Florida note so long as the defendant continued making the note payments to the plaintiff. It was not until August 1977, after the defendant's payments became due, and his business was closed, and the agreement had been signed turning his assets over to the plaintiff, that the plaintiff began collecting the monthly payments on the Florida note.

■ "A technical conversion may very well lack any element of willfulness or maliciousness necessary to except the liability from discharge."[3] The bank must prove that it was injured by an intentional wrongful act done by the defendant without just cause or excuse.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

■ After weighing the evidence in light of the "fresh start" philosophy of the Bankruptcy Code, and being mindful of the burden of proof and the standard of proof in cases of this sort, it is the finding of the court that the plaintiff has not proven by clear, cogent and convincing evidence that the defendant either willfully or maliciously injured the property of the plaintiff within the provisions of § 523(a)(6). The debt, therefore, is dischargeable under § 727.

### ORDER

It is, therefore, ORDERED, ADJUDGED AND DECREED that the debt of the defendant to the plaintiff is dischargeable under § 727 of the Bankruptcy Code (11 U.S.C. § 727).

Any judgment, heretofore or hereafter, obtained in any court other than this court in respect to the aforementioned indebtedness is null and void as a determination of the personal liability of the debtor in connection with the said indebtedness.

The First National Bank of Gainesville is hereby enjoined from instituting or commencing any action or employing any process to collect the aforesaid indebtedness as a personal liability of Richard E. Grainger.

---

**3.** 3 *Collier on Bankruptcy* ¶ 523.16[1] at 523– 116–117 (15th ed. 1979).