**In re LaTarra V. DEMPS, Debtor.**

**Tenet South Fulton, Inc. d/b/a South Fulton Medical Center, Plaintiff,**

**v.**

**LaTarra V. Demps, a/k/a LaTara Venice Demps, M.D., Defendant.**

**Bankruptcy No. 12–75795–WLH.**
**Adversary No. 13–5014.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Jan. 27, 2014.

---

James M. Sherman, Ray & Sherman, LLC, Atlanta, GA, for Plaintiff.

Gregory C. Okwuosah, Lawrenceville, GA, for Defendant.

### ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

WENDY L. HAGENAU, Bankruptcy Judge.

This matter is before the Court on the cross motions for summary judgment filed by the parties. The Motions address the collateral estoppel effect and dischargeability under 11 U.S.C. § 523(a)(6) of an arbitrator's award of attorney's fees under O.C.G.A. § 13–6–11. For the reasons explained below, the Court holds the arbitrator's award to Plaintiff of $87,109.77 pursuant to O.C.G.A. § 13–6–11 is non-dischargeable under 11 U.S.C. § 523(a)(6). The Court therefore grants Plaintiff's Motion for Summary Judgment and denies Defendant's Motion for Summary Judgment.

As this matter arises in connection with a complaint to determine dischargeability of a debt, it constitutes a core proceeding over which this Court has subject matter jurisdiction and as to which this Court can enter a final judgment. *See* 28 U.S.C. § 1334 and § 157(b)(2)(i).

### BACKGROUND

On January 14, 2013, Plaintiff Tenet South Fulton, Inc. ("South Fulton") filed its Complaint Objecting to Discharge and to Dischargeability of Debt under 11 U.S.C. § 523(a)(2), (a)(4) and (a)(6) and 11 U.S.C. § 727. South Fulton's Complaint alleges that it obtained an arbitration award, confirmed by the Fulton County Superior Court, for amounts due from the Debtor under a physician relocation agreement ("Relocation Agreement"). The arbitration award included principal, interest, attorney's fees under the terms of the contract, and attorney's fees awarded under O.C.G.A. § 13–6–11, for "bad faith". On August 30, 2013, South Fulton filed a Motion for Partial Summary Judgment [Docket No. 15], only seeking judgment that the attorney's fees award under O.C.G.A. § 13–6–11 in the amount of $87,109.77 was non-dischargeable under 11 U.S.C. § 523(a)(6). The Debtor responded on August 31, 2013 by filing a Motion for Summary Judgment as to all counts of the Complaint (dischargeability of the full award and the objection to the total discharge of the Debtor) [Docket No. 16]. As the briefing continued, South Fulton then sought to amend its Complaint to drop all counts objecting to the Debtor's discharge under 11 U.S.C. § 727 and dropping all counts as to the dischargeability of South Fulton's debt with the exception of the attorney's fee award made under O.C.G.A. § 13–6–11. The Debtor consented to the amendment to the Complaint. An order was entered permitting the amendment, and the amendment has become final after expiration of the opportunity to object under Fed. R. Bankr.P. 7041.

As such, the only remaining issue in the adversary proceeding and in the cross motions for summary judgment is whether the award of attorney's fees under O.C.G.A. § 13–6–11 is non-dischargeable under 11 U.S.C. § 523(a)(6). South Fulton argues that this Court should give collateral estoppel effect to the findings of the arbitrator and therefore find as a matter of law that the claim for attorney's fees is a debt "for willful and malicious injury by

the debtor to another entity or to the property of another entity" and therefore non-dischargeable pursuant to 11 U.S.C. § 523(a)(6). The Debtor opposes South Fulton's Motion and seeks summary judgment on her own behalf, arguing that the requirements for the application of collateral estoppel have not been met and that, even if they have, the findings of the arbitrator are not sufficient to render the debt non-dischargeable under Section 523(a)(6).

### FACTS

The facts recited herein are undisputed based on each party's statement of undisputed facts and the responses thereto. South Fulton does business as South Fulton Medical Center, a hospital which provides in-patient and out-patient acute care hospital services in East Point, Georgia and surrounding communities. The Debtor is a general surgeon who agreed to relocate to South Fulton's service area and practice general surgery within South Fulton's service area in response to a recognized need for general surgeons in that part of Atlanta. On August 1, 2003, South Fulton and the Debtor entered into a contractual agreement entitled "Relocation Agreement" for a three-year period ending July 31, 2006, unless terminated sooner. Under the agreement, the Debtor agreed to relocate to South Fulton's service area and practice general surgery there. South Fulton agreed in return to provide the Debtor with certain benefits described in the Relocation Agreement. Among the benefits provided by South Fulton was a monthly collections guarantee of $18,333.33 for a period of twelve months (the "Guarantee"). South Fulton paid the Debtor the full $18,333.33 the first month, but thereafter the Debtor was to provide a report showing her income and expenses for the previous month. If the Debtor's collections were less than $18,333.33 per month, then South Fulton was to pay the differ-

ence to the Debtor. Over the 12–month Guarantee period, South Fulton advanced to the Debtor $202,750.33. The Relocation Agreement also provided that, at the end of the 12–month Guarantee period, South Fulton would be entitled to perform a financial reconciliation or audit to determine whether the income guarantee payments that had been made to the Debtor were substantiated by the books and records. At the end of the 12–month period, the Debtor and South Fulton fell into dispute. The Debtor contended she had provided all the books and records she had, but South Fulton found the records inadequate and not auditable. As provided for in the Relocation Agreement, the parties submitted the dispute to arbitration.

The dispute was determined by arbitration in Fulton County, Georgia, in accordance with the American Health Lawyers Association Alternative Dispute Resolution Service Rules of Procedure for Arbitration ("Arbitration"). In the Arbitration, South Fulton sought to recover the full amount advanced under the Relocation Agreement, together with attorney's fees as provided under the Relocation Agreement *and* attorney's fees and expenses of litigation under O.C.G.A. § 13–6–11. The Debtor filed an answer in the Arbitration. The parties then had a series of discovery disputes. On February 14, 2011, the arbitrator entered a Default Award as to Liability, granting South Fulton's motion to strike the Debtor's answer and enter a default judgment, based on the Debtor's failure to respond to discovery requests and to comply with the arbitrator's discovery orders.

The arbitrator then held a hearing on damages, which took place over several days. The Debtor personally attended the hearing, presented evidence, testified and made arguments on her own behalf, but she was unrepresented. Ultimately, the

arbitrator entered a Final Arbitration ("Award") on July 14, 2011, finding the Debtor liable to South Fulton under the Relocation Agreement in the amount of $203,387.07 plus prejudgment interest. [Ex. 1 to Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment, Docket No. 15]. The arbitrator found that South Fulton was entitled to recover attorney's fees under the terms of its contract and also entitled to recover attorney's fees in the amount of $87,109.77 pursuant to O.C.G.A. § 13–6–11. The arbitrator found, among other items, that,

> because [the Debtor's] answer was stricken and she was in default, [she] has admitted South Fulton's allegations that [she] failed to produce the records needed to complete the audits and that Dr. Demps steadfastly refused to allow South Fulton to complete the audit mandated by the Relocation Agreement. Dr. Demps has further admitted facts which I deem show that she has acted in bad faith.... This award under O.C.G.A. § 13–6–11 is an independent basis for recovery of South Fulton's attorney's fees and litigation expenses.

(Award at p. 16). On April 13, 2012, the Superior Court of Fulton County confirmed the Award to Plaintiff and entered final judgment on South Fulton's behalf. On October 14, 2012, the Debtor filed her Chapter 7 bankruptcy case and this litigation ensued.

### CONCLUSIONS OF LAW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is enti-

tled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see* Fed. R. Civ. Proc. 56(c)[1]. The party moving for summary judgment has the burden of demonstrating that no dispute exists as to any material fact. *Hairston v. Gainesville Sun Pub. Co.,* 9 F.3d 913, 918 (11th Cir.1993). Once this burden is met, the non-moving party cannot merely rely on allegations or denials in its own pleadings. Fed. R. Civ. Pro. 56(e). Rather, the non-moving party must present specific facts that demonstrate there is a genuine dispute over material facts. *Hairston,* 9 F.3d at 918. Lastly, when reviewing a motion for summary judgment, a court must examine the evidence in the light most favorable to the non-moving party and all reasonable doubts and inferences should be resolved in favor of the non-moving party. *Id.*

■ The issue raised in this adversary proceeding is whether the Debtor's debt to South Fulton for attorney's fees under O.C.G.A. § 13–6–11 is excepted from discharge. Courts narrowly construe exceptions to discharge in favor of the debtor in order to give effect to the fresh start policy of the Bankruptcy Code. *Hope v. Walker (In re Walker),* 48 F.3d 1161, 1164–65 (11th Cir.1995). The creditor bears the burden of proving non-dischargeability by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

### Collateral Estoppel

■ South Fulton argues that collateral estoppel prevents the Debtor from relitigating the matters determined by the arbitrator. South Fulton contends the arbitrator's findings and conclusion of bad

---

1. Fed.R.Civ.P. 56(c) is made applicable in adversary proceedings by Fed. R. Bankr.P. 7056(c).

faith are binding on the Debtor and sufficient as a matter of law to except the attorney's fees award from discharge. The doctrine of collateral estoppel seeks to prevent the re-litigation of issues previously contested and determined by a valid and final judgment in another court. *Newton v. Lemmons (In re Lemmons)*, 2005 WL 6487216 (Bankr.N.D.Ga.2005). The doctrine of collateral estoppel applies to non-dischargeability proceedings. *Id.* (citing *Grogan*, 498 U.S. at 284 n. 11, 111 S.Ct. 654). When reviewing a state court judgment under the doctrine of collateral estoppel, a federal court must accord the judgment the same preclusive effect as it would be given under the law of the state in which the judgment was rendered. *Id.*

█ This Court must, therefore, turn to Georgia law to determine the preclusive effect of the Award against the Debtor. *Hebbard v. Camacho (In re Camacho)*, 411 B.R. 496, 501 (Bankr.S.D.Ga.2009). Under Georgia law, a party may only assert the doctrine of collateral estoppel when the following elements have been satisfied: (1) identity of the parties is the same; (2) identity of the issues is the same; (3) actual and final litigation of the issue in question occurred; (4) the adjudication was essential to the earlier action; and (5) the parties had a full and fair opportunity to litigate the issues in question. *In re Lemmons*, 2005 WL 6487216. It is without dispute that these principles of collateral estoppel apply to arbitration awards which are final. *Yates Paving & Grading Company, Inc. v. Bryan County*, 287 Ga.App. 802, 805, 652 S.E.2d 851 (2007); *Bennett v. Cotton*, 244 Ga.App. 784, 785, 536 S.E.2d 802 (2000).

*Identity of Parties*

As to identity of the parties, the Debtor concedes she was a party to the Arbitration and is a party in the instant action.

The identity of parties prong of collateral estoppel is, therefore, satisfied.

*Essentiality*

The Debtor did not contest the essentiality prong of the collateral estoppel test. The conclusion that South Fulton was entitled to attorney's fees under O.C.G.A. § 13–6–11 was essential to the Award since it resulted in a final judgment for attorney's fees against the Debtor. The arbitrator's findings of fact and ultimate conclusion that the Debtor acted in bad faith in her performance of the contract are essential to the award of attorney's fees under O.C.G.A. § 13–6–11, since the statute permits an award of attorney's fees for "bad faith".

*Full and Fair Opportunity to Litigate*

█ The full and fair opportunity to litigate the issues in the prior proceeding is rooted in due process concerns. *Microfinancial, Inc. v. Delpiano (In re Delpiano)*, 2005 WL 6488906 (Bankr.N.D.Ga. 2005). The Debtor argues she did not have a full and fair opportunity to litigate because she did not have counsel. But the arbitrator strongly recommended she obtain one, [Ex. E to Aff. of James M. Sherman, Ex. 3 to Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment, Doc. No. 15 ("Sherman Affidavit")]. It was the Debtor's choice whether to have legal representation. Her decision to proceed *pro se* does not mean she did not have the *opportunity* to litigate. *Clark v. Sanders (In re Sanders)*, 315 B.R. 630, 634–35 (Bankr.S.D.Ga.2004) (applying Georgia law). "To hold otherwise would effectively eliminate the doctrine of collateral estoppel in proceedings involving pro se litigants." *Link v. Round (In re Round)*, 210 B.R. 973, 975 (Bankr. E.D.N.C.1997). *See also Wilbert Life Ins. Co. v. Beckemeyer (In re Beckemeyer)*, 222 B.R. 318, 322 (Bankr.W.D.Tenn.1998).

The Debtor has offered no evidence to the Court supporting an argument of failure of due process, which would preclude satisfaction of the full and fair opportunity prong. To the contrary, the documents submitted to the Court indicate she had every opportunity to litigate the issue of liability on which a default was granted. The arbitrator established discovery deadlines and revised them when the parties could not complete discovery. The arbitrator scheduled a hearing on the request for discovery sanctions. The arbitrator's Order No. 6, "Default Award as to Liability", states, Debtor "has failed to respond to, among others, Claimant's discovery requests, certain of the Arbitrator's Orders, and Claimant's Motion to Strike Respondent's Answer and to enter a Default Judgment ... despite Arbitrator's numerous recommendations that Respondent seek legal counsel, Respondent has advised the Arbitrator that she forfeits her case in favor of Tenet South Fulton, Inc. d/b/a South Fulton Medical Center." [Ex. F to Sherman Affidavit]. As the court in *Matter of Graham*, 191 B.R. 489 (Bankr. N.D.Ga.1996) stated, "Other than his own willfulness and obstructionism, nothing prevented him from arguing his case to completion." *Id.* at 496.

Moreover, the Debtor participated in the hearing on damages. The Award contains quotes of Debtor's testimony. The Court concludes the Debtor was provided notice and an opportunity to litigate liability and to appear and present evidence to refute damages at a hearing to determine the amount of damages. *See contra Sterling Factors, Inc. v. Whelan*, 245 B.R. 698, 710 (N.D.Ga.2000) (affirming in part a bankruptcy court decision that held defendants were denied the full and fair opportunity to litigate their claims in state court when the state court allowed the plaintiff to simply submit a "short affidavit" stating it was entitled to damages and attorney's fees; defendants were neither served with a copy of the affidavit nor given the opportunity to respond; and the state court entered an award of damages without noticing or holding a hearing on the foregoing). Thus, the full and fair opportunity to litigate prong has been satisfied.

*Actually Litigated*

 The next prong of the collateral estoppel analysis is whether the matter has been actually litigated. "Georgia case law does not disclose any analytical framework for determining whether a matter was actually litigated. However, 'as a general rule, when a question of fact is put in issue by the pleadings, is submitted to the trier of fact for its determination, and is determined, that question of fact has been 'actually litigated.' '" *Lusk v. Williams (In re Williams)*, 282 B.R. 267, 272 (Bankr. N.D.Ga.2002) (citing 18 James Wm. Moore, et al., *Moore's Federal Practice* ¶ 132.03[2][c] (3d. ed. 1999)). Georgia law recognizes a default judgment as a judgment on the merits entitled to preclusive effect. "A judgment by default properly entered against parties *sui juris* operates as an admission by the defendant of the truth of the definite and certain allegations and fair inferences and conclusions of fact to be drawn from the allegations of the declaration." *Spooner v. Deere Credit, Inc.*, 244 Ga.App. 681, 682, 536 S.E.2d 581 (2000); *McKelvey v. Murray (In re Murray)*, 2009 WL 6527593 (Bankr.N.D.Ga. 2009) (citing *League v. Graham*, 191 B.R. 489 (Bankr.N.D.Ga.1996)).

 The Debtor argues her liability for attorney's fees under O.C.G.A. § 13–6–11 was not actually litigated because liability was determined after her answer was stricken and default was entered. In support of her argument, the Debtor refers to the principles for applying collateral estoppel to a *federal* judgment. As explained

above, because this judgment is a Georgia state judgment, Georgia principles of collateral estoppel apply. The Debtor also relies upon the case of *Franks v. Thomason (In re Franks)*, 4 B.R. 814 (N.D.Ga. 1980). In that case, the District Court held that the Bankruptcy Court could not apply collateral estoppel principles to a default judgment entered in the district court because the actually litigated requirement was not met. This case is distinguishable, though, because it applied principles of collateral estoppel to a federal court judgment, and not a state court judgment. In *Old Republic Nat. Title Ins. Co. v. Hartford Acc. & Indem. Co.*, 944 F.Supp.2d 1327 (N.D.Ga.2013), the court explained that, unlike in *Franks v. Thomason*, the court must apply Georgia law to determine the collateral estoppel effect of a Georgia judgment and that, under Georgia authority, "default judgments do serve as judgments on the merits for purposes of collateral estoppel." *Id.* at 1336.

South Fulton requested attorney's fees under O.C.G.A. § 13–6–11 and the arbitrator ruled on the request. In addition to the default resulting from the stricken answer, the arbitrator held a hearing and considered testimony and documentary evidence before entering the Award. This Court concludes the matters determined in the Award were actually litigated.

*Identity of Issues*

The issue determined by the Award was Debtor's liability for attorney's fees and the amount of the liability. The issue to be determined in this adversary proceeding is dischargeability of that claim. Although a non-bankruptcy court can determine liability and damages, a bankruptcy court must determine dischargeability. *Sterling Factors, Inc.*, 245 B.R. at 708. A bankruptcy court can, however, adopt the findings of a non-bankruptcy court when they have been fully litigated and use those findings to determine whether those acts come within the dischargeability sections of the Bankruptcy Code. *Id.*

The award of attorney's fees under O.C.G.A. § 13–6–11 was based on the arbitrator's finding that Debtor acted in bad faith. Bad faith under O.C.G.A. § 13–6–11 may be found in how the debtor performed the provisions of the contract and how he dealt with the plaintiff. *Wheat Enterprises, Inc. v. Redi–Floors, Inc.*, 231 Ga.App. 853, 857, 501 S.E.2d 30 (1998). The term "bad faith" does not *per se* equate to a deliberate or willful injury, though. Instead, the Court must examine the findings of the arbitrator to determine if the actions of the Debtor in this case support a conclusion that she willfully and maliciously injured the Plaintiff. To the extent the facts found by the arbitrator are the same facts to be considered in connection with dischargeability, the identity of issues prong is satisfied with respect to the findings of the arbitrator.

The Court concludes then that collateral estoppel is applicable and Debtor may not relitigate the matters determined by the arbitrator in the Award. The Debtor had a full and fair opportunity to litigate the award of attorney's fees and actually litigated the liability and damages awarded under O.C.G.A. § 13–6–11. The adjudication was essential and the parties were the same. While the issue of liability and dischargeability are different, the facts found by the arbitrator can form a basis for a non-dischargeability judgment.

### Non–Dischargeability

 Plaintiff alleges its claim for attorney's fees is excepted from discharge under 11 U.S.C. § 523(a)(6). Section 523(a)(6) excepts from discharge "any debt ... for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The term "willful" means "intentional and

deliberate". *Chrysler Credit Corp. v. Rebhan (In re Rebhan)*, 842 F.2d 1257, 1263 (11th Cir.1988). The plaintiff must show that the debtor actually intended to do what the debtor is being accused of doing. *Commonwealth Land Title Ins. Co. v. Homer (In re Homer)*, 168 B.R. 790, 805 (Bankr.N.D.Ga.1994). In *Kawaauhau v. Geiger*, the Supreme Court held that nondischargeability under § 523(a)(6) requires a "deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) (emphasis in original). To establish a willful injury, the plaintiff must show that the debtor defendant had a subjective motive to inflict injury or believed his conduct was substantially certain to cause injury. *Maxfield v. Jennings (In re Jennings)*, 670 F.3d 1329, 1334 (11th Cir. 2012); *In re Lemmons*, 2005 WL 6487216 (citing Restatement (Second) of Torts § 8A; *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1208 (9th Cir.2001); *Bank of Lumber City v. Rowland (In re Rowland)*, 316 B.R. 759, 763–64 (Bankr.S.D.Ga. 2004)). "[T]he debtor's subjective intent in an action under section 523(a)(6) may be inferred from surrounding circumstances." *Allison v. Dean (In re Dean)*, 2013 WL 1498305 (Bankr.M.D.Ala.2013) (cites omitted).

■ The term "malicious" means "wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill will." *Jennings*, 670 F.3d at 1334. Recklessness is insufficient to establish willfulness, but may be sufficient to establish malice, which can be implied or constructive. *Rebhan*, 842 F.2d at 1262–63. So, "a wrongful act done intentionally, which necessarily produces harm or which has a substantial certainty of causing harm and is without just cause or excuse is 'willful and malicious' within the

meaning of section 523(a)(6)." *In re Turnage*, 460 B.R. 341, 346 (Bankr.N.D.Ga. 2011).

■ In support of his award of attorney's fees and finding of bad faith, the arbitrator found that the Debtor intentionally failed to make any effort to bill or collect for services to patients in order to reduce the amount to be paid by South Fulton (Award p. 14). The Debtor admitted she was required to bill her patients and to attempt to collect from them in order to reduce the monthly guarantee from South Fulton (Award p. 14). The Debtor nevertheless failed to establish a billing system and failed to provide information to her accounting service to enable them to bill for services rendered, to collect from payors, and to reconcile her accounts. (Award pp. 15–16). Importantly, the arbitrator found the Debtor shredded her patient sign-in sheets and maintained no record of the patients she treated during the operative period. (Award p. 14). The arbitrator found "Dr. Demps candidly admitted in one or more of the hearings that because South Fulton was paying her the monthly income guarantee, she did not care what she was billing or what she was collecting, and she made no concerted effort to properly bill her patients or to seek payment of the bills that she did issue." (Award p. 15). Dr. Demps' testimony included the following statement: "I figured if I got paid, I got paid. If I didn't, I'm not worrying because it because I at least got paid from Tenet. So I wasn't very concerned at the time." (Award p. 15). The arbitrator also found the Debtor failed to produce the documents that would be necessary for South Fulton to conduct the audit and failed to cooperate with South Fulton or the arbitrator in allowing an audit to be conducted. (Award p. 13). The arbitrator's findings are based not only on the Debtor's default by virtue of

the stricken answer but based on her actual testimony at several days of damages hearings. (Award p. 14).

Based on these findings, the Court concludes the Debtor intentionally failed to bill and collect from her patients, and that she intended South Fulton to be injured by paying the Debtor more than required under the Relocation Agreement and incurring expenses and attorney's fees in trying to verify its liability, if any, to the Debtor. Even if some of the billing practices could be considered sloppy or negligent, the Debtor's shredding of patient sign-in sheets and records of patient visits is intentional and can only have been done to thwart South Fulton's attempts to establish that it did not owe the full amount under the Relocation Agreement. Moreover, the Debtor's testimony at the Arbitration confirms she knew the ramification of her actions would be that South Fulton would pay her the full amount under the Relocation Agreement and she would not have to repay them anything. Of course, the Debtor will take the position the injury was not intentional or deliberate and, as is usually the case, there is no direct testimony from the Debtor that she intended to injure South Fulton. Nevertheless, the Court can consider all of the surrounding circumstances when determining whether the Debtor intended to injure South Fulton or whether her acts had a substantial certainty of injury. The testimony of the Debtor shows she knew she was to bill and collect to reduce what was owed by South Fulton, that she intentionally did not bill and collect, that she destroyed records needed to establish amounts to bill and collect, and that she knew the result of those actions would be that South Fulton would pay her the full amount and it would be unable to reduce that obligation. The Court can only conclude the Debtor willfully intended to injure South Fulton. The Court also concludes the Debtor's actions were malicious, wrongful and without just cause. Again, the shredding of the patient files and the testimony of the Debtor that she did not worry about collecting because she knew South Fulton would pay her, support the finding of maliciousness.

### CONCLUSION

The Court therefore concludes the attorney's fees claim of South Fulton in the amount of $87,109.77 awarded by the arbitrator under O.C.G.A. § 13–6–11 is non-dischargeable under 11 U.S.C. § 523(a)(6).